OPINION OF THE COURT
Nicholas A. Clemente, J.
On March 4, 1981, respondent, while a passenger on a Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) bus, was injured when it collided with another vehicle. Subsequently, respondent served MABSTOA with a demand for arbitration claiming that such other vehicle was uninsured. MABSTOA, while conceding that it must provide uninsured motorist benefits as a self-insurer, commenced this proceeding seeking an order pursuant to CPLR 7503 staying arbitration maintaining that since it never consented to such arbitration it is not required to do so by statute.
MABSTOA also contends as another reason to stay arbitration that respondent has merely alleged but not shown that the vehicle which struck the MABSTOA bus was uninsured.
*379 Respondent’s position is that MABSTOA as a self-insurer is no different than any other insurer and must accordingly proceed to arbitration.
The genesis of the controversy at bar is in the posture originally adopted by the New York City Transit Authority that as a self-insured political subdivision it was not required to provide uninsured motorist protection under section 370 of the Vehicle and Traffic Law. This position was definitively rejected by Matter of New York City Tr. Auth. (Thom) (70 AD2d 158, affd 52 NY2d 1032).
Thus, the petitioner, while compelled to concede that it must provide uninsured motorist protection nevertheless maintains that absent its consent the respondent is restricted to a judicial forum.
It is true that the specific issue posited by MABSTOA, to wit: whether a self-insurer must submit to arbitration of uninsured motorist claims was not addressed either in the Court of Appeals or the Appellate Division’s opinions in Matter of New York City Tr. Auth. (Thom) (supra).
It was, however, considered in Matter of New York City Tr. Auth. (Ferrier) (Kings County, Supreme Ct, Nov. 30, 1982, Index No. 10524/81) where Justice Arthur J. Cooperman denied petitioner’s cross motion to stay arbitration and held that the Transit Authority was deemed to have uninsured motorist coverage in the form prescribed by Motor Vehicle Accident Indemnification Corporation.
An examination of the Thom decision, Justice Cooper-man’s decision, subdivision 2-a of section 167 of the Insurance Law, and section 370 of the Vehicle and Traffic Law mandates the conclusion that MABSTOA must submit to arbitration.
Section 370 (subd 1, par [b]) of the Vehicle and Traffic Law provides in part as follows: “Notwithstanding any contrary provision of this chapter, any such bond, or policy of insurance shall also provide for uninsured motorists coverage in the minimal amount and in the form provided for in subdivision 2-a of section one hundred sixty-seven of the Insurance Law”.
Subdivision 2-a of section 167 of the Insurance Law states: “No policy insuring against loss resulting from *380 liability imposed by law for bodily injury or death suffered by any natural person * * * shall be issued or delivered by any authorized insurer * * * unless it contains a provision whereby the insurer agrees that it will pay to the insured, as defined in such provision, subject to the terms and conditions set forth therein to be prescribed by the board of directors of , the Motor Vehicle Accident Indemnification Corporation and approved by the superintendent, all sums * * * which the insured * * * shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle, [or] unidentified motor vehicle which leaves the scene of an accident”.
The standard policy in New York as approved by the superintendent requires that an insurer submit to arbitration of uninsured claims.*
It is quite apparent that no preferential treatment was intended by the Legislature when it permitted self-insurance. As noted in Thom at pages 170-171:
“[T]he authority has seized upon the privilege given to it in 1957 to opt to be an unregulated self-insurer (based on its belief that this would reduce its expenses) to claim that it thereby became exempt from the 1971 requirement of providing uninsured motorist coverage for its passengers.
“As previously indicated, the 1953 and 1957 amendments to section 1215 of the Public Authorities Law in no way diminished the substantive rights of anybody, since it was assumed that the authority could properly handle compensation and motor vehicle liability claims without becoming insolvent, and that the cost of self-insurance would be less than that of insurance or indemnity bonds. There was every reason for a legislator to vote for such amendments and no apparent reason why he should not. It would be ironic that those privileges, so favorable to the authority, should be converted from their original intent so that the authority would not be subject to the substantive obligations of other carriers to their passengers and other persons injured as the result of a motor vehicle accident.
*381 “It is not rational to believe that the 1971 Legislature intended that the mandate of uninsured motorists coverage as applied to a carrier of persons depended upon whether the carrier had previously chosen to be a self-insurer to save the conceived additional expense of an indemnity bond or insurance policy. If anything, a carrier’s insurance responsibility to its passengers and others should be greater, and not less, than that of other owners or operators of motor vehicles.”
Accordingly, I conclude that pursuant to subdivision 2-a of section 167 of the Insurance Law MABSTOA is statutorily required to submit to arbitration. To hold otherwise would create an unfair and unintended dichotomy between insurers and self-insurers. Being a self-insurer relieves MABSTOA from obtaining a policy of insurance from an insurance company. It does not relieve MABSTOA from the insuring requirements imposed upon an insurance company. (Cf. Matter of Allstate Ins. Co. v Shaw, 52 NY2d 818.)
As to MABSTOA’s claim that respondent has not shown that the vehicle which struck its bus was uninsured the burden of proving such vehicle insured is on the insurer. A preliminary hearing would be required only in the absence of a positive statement by claimant that the vehicle was uninsured coupled with a supportable contention by the insurer that the status of insurance was in doubt (Matter of Len [Lumbermens Mut. Cas. Co.], 80 AD2d 682). Such is not the case here.
Accordingly, MABSTOA’s application is denied.

 Interestingly, unlike New York, 13 States have declared arbitration clauses in uninsured motorist policies unenforceable (2 Schermer, Automobile Liability Insurance [2d ed], § 33.02).